IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anias Foster,                          :
                   Petitioner          :
                                       :
            v.                         :
                                       :
Pennsylvania Parole Board,             :    No. 1022 C.D. 2020
                   Respondent          :    Submitted: April 16, 2021


BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                    FILED: May 25, 2021


            Anias Foster (Foster) petitions this Court for review of the
Pennsylvania Parole Board's (Board) September 11, 2020 order denying his request
for administrative relief. Foster presents three issues for this Court's review: (1)
whether the Board erred by failing to properly credit his time served under the
Board's detainer; (2) whether Foster served his sentences in the correct order under
Pennsylvania law; and (3) whether the Board erred by failing to provide a
contemporaneous statement explaining the rationale behind its decision to deny
Foster credit for the time he spent at liberty on parole. After review, this Court
affirms in part, and vacates and remands in part.

            On December 12, 2005, Foster was sentenced to 3 to 8 years of
incarceration after pleading guilty to drug charges (Original Sentence). *See* Certified
Record (C.R.) at 1-3. At that time, his maximum sentence release date was January
3, 2014. *See* C.R. at 2.

On January 15, 2009, Foster was paroled from his Original Sentence. *See* C.R. at 4-10. At that time, he had 1,814 days remaining to be served on his Original Sentence. *See* C.R. at 52. As a condition of his parole, Foster signed and, therefore agreed to, Conditions of Parole/Reparole (Parole Conditions). Foster did not object, *inter alia*, to the following parole condition:

> [i]f you are convicted of a crime committed while on parole/reparole, the Board has the authority, after an appropriate hearing, to recommit you to serve the balance of the sentence or sentences which you were serving when paroled/reparoled, with no credit for time at liberty on parole.

C.R. at 8.

On January 19 or 20, 2011,[1] the United States Marshals Service arrested and charged Foster with new drug charges (Federal Charges). *See* C.R. at 12-13, 15-19, 29, 32. On January 20, 2011, Foster was placed in the Adams County Prison "as a hold for the United States Marshals[.]" C.R. at 81. On January 21, 2011, the Board issued a warrant to commit and detain Foster. *See* C.R. at 11. On January 28, 2011, the Board served Foster with a Notice of Charges and Hearing based on the Federal Charges, and notified him of the Board's intent to hold a detention hearing. *See* C.R. at 13. That same day, Foster waived his right to counsel and a detention hearing. *See* C.R. at 14. According to Foster's January 31, 2011 Criminal Arrest and Disposition Report, Foster did not post bail on the Federal Charges. *See* C.R. at 19, 29. On March 7, 2011, the Board detained Foster pending disposition of his Federal Charges. *See* C.R. at 18-25.

---

[1] According to the federal Arrest Warrant and the Board's Notice of Charges, federal authorities arrested Foster on January 19, 2011. *See* C.R. at 12-13, 18. However, the Board's Criminal Arrest and Disposition Report and its Hearing Report represent that federal authorities arrested Foster on January 20, 2011. *See* C.R. at 19, 29, 32.

On March 12, 2012, Foster pled guilty to the Federal Charges. *See* C.R. at 26. On April 3, 2012, the Board received official verification of Foster's conviction. *See* C.R. at 30, 32. On April 12, 2012, the Board served Foster with a Notice of Charges and Hearing based on the Federal Charges, and notified him of the Board's intent to hold a revocation hearing. *See* C.R. at 28. That same day, Foster admitted to his conviction on the Federal Charges and waived his right to counsel and a revocation hearing. *See* C.R. at 27. On May 18, 2012, the Board voted to recommit Foster to a State Correctional Institution (SCI) as a convicted parole violator (CPV) to serve 18 months of backtime "when available pending sentencing on [his] federal conviction." C.R. at 38. On August 29, 2012, Foster was sentenced to, *inter alia*, an aggregated term of 120 months (Federal Sentence). *See* C.R. at 40. Foster remained in the Adams County Prison until September 10, 2012, when he was returned to the United States Marshals' custody and moved to a federal correctional institution. *See* C.R. at 81. On January 10, 2013, the Board issued a warrant to retake and return Foster to the Board's jurisdiction as a CPV. *See* C.R. at 45.

By June 12, 2019 Detainer Action Letter, the United States Department of Justice, Federal Bureau of Prisons, notified the Board that Foster was being released, and the Board should be prepared to take him into custody on July 26, 2019. *See* C.R. at 46-47. The Board took Foster into custody on July 26, 2019. *See* C.R. at 48.

By decision issued on July 31, 2019,[2] the Board referred to its May 18, 2012 action recommitting Foster to an SCI as a CPV to serve 18 months' backtime. *See* C.R. at 54. The Board recalculated Foster's Original Sentence maximum release date as July 13, 2024. *See* C.R. at 54-55.

---

[2] Foster received the Board's July 31, 2019 decision on August 8, 2019. *See* C.R. at 54.

3

On August 28, 2019, Foster submitted an Administrative Remedies Form to the Board challenging its July 31, 2019 decision, claiming that he was entitled to credit for the time he was incarcerated from January 20, 2011 to August 29, 2012, because he was being held solely under the Board's detainer. *See* C.R. at 67-68. Foster also argued that the Board violated Section 6138(a)(5.1) of the Prisons and Parole Code (Parole Code), 61 Pa. C.S. § 6138(a)(5.1), which required that he serve his Original Sentence before his Federal Sentence, particularly since he was being held in Adams County Prison. *See id.* Lastly, Foster claimed that the Board erred by denying him credit for the time he spent at liberty on parole and failing to articulate its basis for doing so.[3] *See* C.R. at 67, 69. By November 1, 2019 Confirmation of Incarceration, the Adams County Prison acknowledged that Foster was incarcerated there "as a hold for the United States Marshals . . . [from] January 20, 2011 [to] September 10, 2012[.]" C.R. at 81.

On September 11, 2020, the Board denied Foster's request for administrative relief, explaining:

> The Board paroled [Foster] from a[n SCI] on January 15, 2009[,] with a max[imum] date of January 3, 2014[,] leaving [Foster] 1,814 days remaining on [his] [O]riginal [S]entence the day [he was] released. The Board's decision to recommit [Foster] as a [CPV] authorized the recalculation of [Foster's] max[imum] date to reflect that [he] received no credit for the time spent at liberty on parole. 61 Pa.C.S. § 6138(a)(2). The Board denied [Foster] credit for the time spent at liberty on parole in this case, thus, [Foster] owed 1,814 days on [his] [O]riginal [S]entence.
>
> The record shows that [Foster was] arrested by federal authorities for [the Federal C]harges on January 20, 2011[,] and there is no indication that [Foster] posted bail. A Board detainer was lodged the following day, January

---

[3] On October 2, 2019 and February 18, 2020, Foster sent letters to the Board requesting the Board's response to his appeal. *See* C.R. at 71-82.

4

21, 2011. On August 29, 2012, [Foster was] sentenced in the United States District Court to a new term of federal incarceration of 120 months. [Foster was] released from [his] new [F]ederal [S]entence on July 26, 2019[,] when [Foster] returned to an SCI for the first time since [his] release on [] parole. Based on these facts, [Foster is] not entitled to any pre-sentence credit because the Board did not hold [Foster] solely on its warrant prior to sentencing in the United States District Court. *Gaito v. Pa. B[d.] of Prob*[.] [&] *Parole*, 412 A.2d 568 (Pa. 1980). Thus, [Foster] still owed 1,814 days on [his] [O]riginal [S]entence. Adding that total to [his] July 26, 2019 availability date yields a recalculated max[imum] date of July 13, 2024.[4]

C.R. at 83. Foster timely appealed to this Court.[5]

Foster argues that the Board erred by failing to properly credit his time served under the Board's detainer. Specifically, Foster asserts that he is entitled to credit toward his Original Sentence for the time he was incarcerated on the Federal Charges and the Board's detainer from January 21, 2011 to August 29, 2012.

The law is well established:

[I]f a defendant is being held in custody solely because of a detainer lodged by the Board and has otherwise met the requirements for bail on the new criminal charges, the time which he spent in custody shall be credited against his original sentence. If a defendant, however, remains incarcerated prior to trial because he has failed to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to his new sentence.

*Gaito*, 412 A.2d at 571.

[Foster] failed to make bail on these new charges. Therefore, [Foster] was not incarcerated solely on the

[4] Foster is currently "out of [Federal] custody." https://vinelink.com/classic/#/searchResults/1 (last visited May 24, 2021).

[5] This Court's review of a Board decision denying administrative relief "is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether necessary findings were supported by substantial evidence." *Plummer v. Pa. Bd. of Prob. & Parole*, 216 A.3d 1207, 1210 n.4 (Pa. Cmwlth. 2019).

Board's warrant. "[O]nce a parolee is sentenced on a new criminal offense, the period of time between arrest and sentencing, when bail is not satisfied, must be applied to the new sentence, and not to the original sentence." *Armbruster v. Pa. Bd. of Prob. & Parole*, 919 A.2d 348, 352 (Pa. Cmwlth. 2007). As a result, [Foster's] claim for credit from [January 21, 2011 to August 29, 2012] fails.

*Palmer v. Pa. Bd. of Prob. & Parole*, 134 A.3d 160, 166 (Pa. Cmwlth. 2016).

Foster also contends that he did not serve his sentences in the correct order under Section 6138(a)(5.1) of the Parole Code. The Board did not address this issue in its September 11, 2020 decision.

Section 6138(a) of the Parole Code states, in pertinent part:

(1) A parolee under the jurisdiction of the [B]oard released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record, may at the discretion of the [B]oard be recommitted as a parole violator.

. . . .

(5.1) If the parolee is sentenced to serve a new term of total confinement by a [f]ederal court or by a court of another jurisdiction because of a verdict or plea under paragraph (1), the parolee shall serve the balance of the original term before serving the new term.

61 Pa.C.S. § 6138(a).

In its brief to this Court, the Board declares:

After receiving his new federal sentence, [Foster], by law, was to serve the remainder of his [Original Sentence] before the commencement of his new [F]ederal [S]entence. The federal courts are either unaware of such nuances, or simply continue its prosecution unimpeded by such state legalistic peccadillos. The question arises, what, as a practical matter[,] do [we do] about it. The state lacks the authority to direct the federal authorities in the furtherance of completing its mission to protect the

6

citizens of the United States. [Foster] is correct in his[] legal position, as a practical matter, but [Foster] fails to provide an enforceable game plan to force the federal authorities to turn over inmates subject to state jurisdictional oversight in furtherance of following the Pennsylvania statutes on the matter.

The Court can duly note though, that [Foster] does not specify what specific harm he has suffered from the failure to have him serve his [F]ederal [S]entence before being returned back to the state to finish the completion of his [O]riginal [S]entence.

Board Br. at 7-8.

This Court has explained:

Section 71.4(1)(i) of the Board's Regulations specifies that "[i]f a parolee is confined outside the jurisdiction of the Department of Corrections, such as . . . confinement in a [f]ederal correctional institution . . . , a revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a [s]tate correctional facility." 37 Pa. Code § 71.4(1)(i). In addition, Section 71.5(a) of the Board's Regulations states: "If the parolee is . . . in [f]ederal custody, the Board may lodge its detainer[,] but other matters may be deferred until the parolee has been returned to a [s]tate correctional facility in this Commonwealth." 37 Pa. Code § 71.5(a). Section 71.5(c)(1) of the Board's Regulations further provides that parole revocation proceedings may be deferred during any period in which a parolee is unavailable. *See* 37 Pa. Code § 71.5(c)(1).

In *Brown v. Pennsylvania Board of Probation & Parole*, 184 A.3d 1021 (Pa. Cmwlth. 2017), wherein Brown similarly argued that Section 6138(a)(5.1) of the Parole Code required the Board to obtain him from federal custody to serve his state sentence, this Court declared:

[U]nder [Sections 71.4(1)(i), 71.5(a) and 71.5(c)(1) of the Board's R]egulations, when a parolee is in federal custody, confined in a federal facility, or is otherwise unavailable, the Board's duty to . . . take other action beyond issuing a detainer, is deferred until the parolee is returned to

7

a[n] SCI regardless of when the Board received official verification of a parolee's new conviction.

*Id.* at 1025.

*Stroud v. Pa. Bd. of Prob. & Parole*, 196 A.3d 667, 672-73 (Pa. Cmwlth. 2018).

The *Stroud* Court expounded:

Moreover, when analyzing the interplay between the Regulations and Section 6138(a)(5.1) of the Parole Code's sentence order requirements, the *Brown* Court ruled, based on circumstances similar to the instant case:

[Brown's] argument presumes that the Board had the **ability to obtain him from federal custody** in order to hold a revocation hearing and recommit him as a CPV to serve the remainder of his original sentence in accordance with Section 6138(a)(5.1) [of the Parole Code]. However, the Board asserts that it does not have the ability to acquire a Pennsylvania parolee from the custody of another jurisdiction in order to recommit the parolee to serve the remainder of the original sentence. Brown has not provided any legal authority that grants the Board this authority. Thus, . . . Brown was **already unavailable to the Board** when he pled guilty and was sentenced, as well as when it received official verification of his conviction. The Board could not have acquired Brown until after his release from federal custody . . . .

*Id.* at 1027 (emphasis in original); *see also Dill v. Pa. Bd. of Prob. & Parole*, 186 A.3d 1040, 1046 (Pa. Cmwlth. 2018) ("We rejected the parolee's claim that Section 6138(a)(5.1) of the Parole Code made him available to the Board prior to his release from the federal prison system.")[.] *Id.* "Simply, there is no legal authority for the notion that the Board could or should 'pluck' [the parolee] from federal prison to hold a revocation hearing." *Id.* (quoting *Santosusso v. Pa. Bd. of Prob. & Parole* . . . (Pa. Cmwlth. No. 574 C.D. 2017, filed January 30, 2018));[6] *Santosusso*, slip op. at 6 ("As in *Brown*, we are

---

[6] This Court acknowledges that its unreported memorandum opinions may only be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth

8

unaware of any authority supporting . . . that the Board has the power to pluck a Pennsylvania parolee from a federal prison for the purpose of recommitting him as a parole violator."); *Steward v. Pa. Bd. of Prob. & Parole*, . . . (Pa. Cmwlth. No. 684 C.D. 2017, filed March 16, 2018), slip op. at 11[] ("We are not persuaded by [parolee's] argument that Section 6138(a)(5.1) of the Parole Code made him available to the Board prior to his release from Maryland's Department of Corrections and return to [the] SCI.").

*Stroud*, 196 A.3d at 673.

Here, as in [*Stroud*,] *Brown*[,] and *Dill*, this Court is not aware of any legal authority under which the Board could have retrieved [Foster] from federal custody in order to conduct his revocation hearing and serve his state sentence pursuant to Section 6138(a)(5.1) of the Parole Code. The Board issued its [January 21, 2011] warrant to commit and detain [Foster], which could not occur until his return from federal custody. Federal authorities did not return [Foster] to the Board's custody until after he completed his federal sentence in [July 2019]. Therefore, he was unavailable to the Board until [July 2019]. Thereafter, the Board promptly recommitted him to serve his state sentence. Accordingly, [Foster's] argument that the Board should have obtained him from federal custody to first serve the backtime on his Original Sentence has no merit.

*Stroud*, 196 A.3d at 673-74 (footnote omitted).

Finally, Foster asserts that the Board erred by failing to provide a contemporaneous statement explaining the rationale behind its decision to deny Foster credit for the time he spent at liberty on parole, in violation of the Pennsylvania Supreme Court's ruling in *Pittman v. Pennsylvania Board of Probation & Parole*, 159 A.3d 466 (Pa. 2017). The Board did not address this issue in its September 11, 2020 decision.

Where the [Board] determines to recommit a parolee as a [CPV],

---

Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). This Court cites to the unreported cases herein for their persuasive value.

the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, *except as provided under paragraph (2.1),*[7] shall be given no credit for the time at liberty on parole.

61 Pa. C.S. § 6138(a)(2) (emphasis added). Section 6138(a)(2.1) of the Parole Code provides that, '[t]he [Board] may, in its discretion, award credit to a parolee recommitted . . . for the time spent at liberty on parole,' with [] enumerated exceptions, none of which are applicable in this case. 61 Pa. C.S. § 6138(a)(2.1).

Recently, in *Pittman*, our Supreme Court explained that, when the [Board] exercises its discretion under Section 6138(a)(2.1) [of the Parole Code], it 'must articulate the basis for its decision to grant or deny a convicted parole violator credit for time served at liberty on parole.' [*Pittman*,] 159 A.3d at 474.

*Smoak v. Talaber*, 193 A.3d 1160, 1163-64 (Pa. Cmwlth. 2018) (footnotes omitted).

Based on this record, at the time of his parole (on January 15, 2009), Foster had 1,814 days remaining on his Original Sentence. Because he violated a parole condition and committed a crime, the Board had jurisdiction to and did recommit Foster to serve 18 months of his Original Sentence. Foster was arrested

---

[7] Section 6138(a)(2.1) of the Parole Code states, in relevant part:

The [B]oard may, in its discretion, award credit to a parolee recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:

(i) The crime committed during the period of parole or while delinquent on parole is a crime of violence as defined in [Section 9714(g) of the Sentencing Code] . . . (relating to sentences for second and subsequent offenses) or a crime requiring registration under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).

61 Pa.C.S. § 6138(a)(2.1). Because Foster's charges did not involve a crime of violence as specified in Section 9714(g) of the Sentencing Code, the Board had the discretion to award Foster credit, but did not.

by the United States Marshals Service on January 19, 2011. The Board properly calculated Foster's new July 13, 2024 maximum sentence release date by adding 1,814 days to July 26, 2019. The Board had the discretion to, but denied Foster credit for the time he spent in good standing at liberty on parole. However, the Board admits that it "failed to enunciate the basis for denying [Foster] any credit as required by [*Pittman*] and the matter should be remanded for the Board to reconsider its position and rectify this apparent error." Board Br. at 6.

Accordingly, the Board's recalculation of Foster's maximum sentence date is vacated, and the matter is remanded for the Board to consider whether to credit Foster with the time he spent at liberty on parole and, if such credit is denied, for the Board to explain its reasons in accordance with *Pittman*. *See Plummer v. Pa. Bd. of Prob. & Parole*, 216 A.3d 1207 (Pa. Cmwlth. 2019).

For the above reasons, the portion of the Board's September 11, 2020 order reaffirming the revocation of Foster's parole and recommitment as a CPV to serve 18 months of backtime *after* he served his Federal Sentence and *without* credit for the time he served from January 21, 2011 to August 29, 2012 is affirmed. The portion of the Board's order reaffirming Foster's maximum sentence release date is vacated, and this case is remanded for the Board to issue a new decision on whether to credit Foster for time he spent at liberty on parole and, if such credit is denied, the Board shall state its explanation in accordance with *Pittman*. The Board shall then recalculate Foster's maximum sentence release date accordingly.

_____
ANNE E. COVEY, Judge

11

Anias Foster,                              :
              Petitioner                :
                                :
        v.                              :
                                :
Pennsylvania Parole Board,                 :    No. 1022 C.D. 2020
              Respondent                :

## O R D E R

AND NOW, this 25th day of May, 2021, the portion of the Pennsylvania Parole Board's (Board) September 11, 2020 order reaffirming the revocation of Anias Foster's (Foster) parole and recommitment as a convicted parole violator is affirmed. The portion of the Board's order recalculating Foster's maximum sentence release date is vacated, and this matter is remanded to the Board to issue a new decision consistent with this opinion.

        Jurisdiction relinquished.

                                      _____
                                      ANNE E. COVEY, Judge